UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

JOSEFA YAGUI, *individually and on behalf of others similarly situated*,

         Plaintiff,

    v.

REPUBLIC BAR AND LOUNGE INC. *d/b/a* REPUBLIC LATIN FUSION, SYED HOSSIN, and CHRISTIAN ALMONT,

         Defendants.

------------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-2674 (MKB)

MARGO K. BRODIE, United States District Judge:

 Plaintiff Josefa Yagui commenced this action[1] on behalf of herself and other similarly situated employees on May 13, 2025, against Defendants Republic Bar and Lounge, doing business as Republic Latin Fusion ("Republic"), Syed Hossin, and Christian Almont, alleging

---

 [1] Yagui commenced this action with two other named plaintiffs, Yonquer Barrios and Maurillo Toj Sabana (collectively, "Plaintiffs"). Barrios and Sabana subsequently rescinded their participation in the action. (*See* Compl., Docket Entry No. 1.) On August 14, 2025, Sabana filed a notice of voluntary dismissal of his claims without prejudice. (Ltr. Notice of Voluntary Dismissal, Docket Entry No. 10.) On September 24, 2025, Plaintiffs' counsel moved to withdraw as attorney for Barrios after Barrios "failed to cooperate with the prosecution of this matter" by refusing to respond to outreach via phone and letter in both English and Spanish. (Mot. to Withdraw as Att'y, Docket Entry No. 13; Ltr. in Supp. of Mot. to Withdraw, Docket Entry No. 14.) On September 25, 2025, former Magistrate Judge Cheryl L. Pollak granted the motion to withdraw and terminated counsel for Barrios. (Order dated Sep. 25, 2025.) Judge Pollak's order directed Barrios to find new counsel or indicate whether he wished to proceed *pro se* by filing a status report or otherwise communicating with the Court by November 25, 2025, or else his claims would be recommended for dismissal for failure to prosecute. (*Id.*) On September 25, 2025, Plaintiffs' counsel filed a certificate of service demonstrating service to Barrios of Judge Pollak's September 25, 2025 order. (Cert. of Service, Docket Entry No. 16.) Barrios subsequently failed to appear or otherwise respond to Judge Pollak's order, and as a result, the Court dismisses Barrios's claims for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York

Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").  (*See* Compl.)  Yagui alleges Defendants

violated the FLSA and NYLL by failing to (1) pay her and class members the applicable

minimum wage, (2) pay her and class members overtime compensation, (3) pay her and class

members a "spread of hours" premium for each day where an employee's workday exceeded ten

hours, (4) provide her and class members with a written wage notice and weekly wage

statements, (5) reimburse her for the expense of purchasing and maintaining equipment required

for their employment, and, (6) timely pay her and class members on a regular weekly basis.  (*See*

*id*. ¶¶ 88–171.)  Defendants failed to appear or otherwise respond to this action despite proper

service,[2] and on September 26, 2025, the Clerk of Court entered default against them.  (Clerk's

Entry of Default, Docket Entry No. 17.)

On October 22, 2025, Yagui moved for default judgment against Defendants pursuant to

Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b).[3]  (Yagui's Mot.)

For the reasons set forth below, the Court grants in part and denies in part Yagui's motion for

default judgment.

---

[2]  Plaintiffs caused Republic to be served with the Complaint through the New York Secretary of State on May 20, 2025, (Aff. of Service of Republic, Docket Entry No. 6), and caused Hossin and Almont to be served with the Complaint by delivering a copy to a person of suitable age and discretion at Republic, their place of business, on May 22, 2025, and by mailing another copy to Republic that same day, (Aff. of Service of Almont, Docket Entry No. 7; Aff. of Service of Hossin, Docket Entry No. 8).  Yagui caused Defendants to be served with the default judgment motion papers through first-class mail to Republic on October 22, 2025.  (Cert. of Service of Defs., Docket Entry No. 22.)

[3]  (Notice of Mot. for Default J. ("Yagui's Mot."), Docket Entry No. 19; Decl. of Jesse Barton in Supp. of Yagui's Mot. for Default J. ("Barton Decl."), Docket Entry No. 20; Damages Chart, annexed to Barton Decl. as Ex. D ("Damages Chart"), Docket Entry No. 20-4; Attorneys' Fees, annexed to Barton Decl. as Ex. E ("Attorneys' Fees"), Docket Entry No. 20-5; Yagui's Mem. in Supp. of Yagui's Mot. ("Yagui's Mem."), Docket Entry No. 21; Decl. of Josefa Yagui annexed to Yagui's Mem. as Ex. 1 ("Yagui Decl."), Docket Entry No. 21-1.)

## I.    Background

Yagui is a former employee[4] of Republic who resides in Kings County, New York.[5]

(Compl. ¶¶ 1, 19; Yagui's Decl. ¶ 2.)  Defendant Republic is a corporation organized and

existing under the laws of the State of New York.  (Compl. ¶ 22; Yagui's Mem. 4.)  Republic

operates as a restaurant located at 181 N. 10th Street, Brooklyn, New York.  (Compl. ¶ 2.)

---

[4]  The Court notes that the Complaint states "Plaintiffs are present employees of Defendants." (Compl. ¶ 4.)  However, the Yagui Declaration states Yagui "*was* employed," (Yagui Decl. ¶ 3 (emphasis added)), and provides a period of employment from May of 2023 until March 21, 2025, (*id.* ¶ 10).  In her default judgment memorandum, Yagui acknowledged that her Complaint erroneously stated she was presently employed and clarifies her last date of employment was March 21, 2025.  (Yagui's Mem. 5 n.1.)  When there are discrepancies between factual allegations in the Complaint and signed declarations or affidavits of the plaintiff, courts have relied on the facts in the affidavits and declarations to resolve liability.  *See Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 256 n.4–5 (E.D.N.Y 2024) (relying on factual allegations in the plaintiff's declaration over contradictory allegations in the amended complaint); *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *2, 2 n.7 (E.D.N.Y. Mar. 21, 2023) (crediting factual allegations in the plaintiffs' affirmations over allegations in the second amended complaint); *Rilloraza v. Rhodes*, No. 21-CV-3305, 2023 WL 7686699, at *1 n.1 (E.D.N.Y. Sep. 8, 2023) ("Where the affidavit deviates from the allegations set forth in the [a]mended [c]omplaint and [m]emorandum in [s]upport of [m]otion for [d]efault [j]udgment, this [c]ourt relies on the facts stated in [the] plaintiff's detailed affidavit.") (collecting cases).  Accordingly, the Court relies on Yagui's Declaration, which states that Yagui's last day of work was March 21, 2025.  *See Cao*, 727 F. Supp. 3d at 256 n.4–5.

[5]  The Court assumes the truth of the factual allegations in the Amended Complaint for purposes of this Memorandum and Order.  *See Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quoting Wright, Miller & Kane, 10A Fed. Prac. & Proc. § 2688.1 (4th ed.))); *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (per curiam) (noting that courts must accept allegations in the complaint as true "in deciding whether a default judgment is appropriate").  "Where there are discrepancies between factual allegations in the [ ] [c]omplaint and the signed declarations . . . of [the p]laintiffs, [the Court may] rel[y] on the facts in the . . . declarations to resolve liability . . . ." *Cao*, 727 F. Supp. 3d at 256 n.4; *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) ("[A] court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim." (citation omitted)).  "[The p]laintiffs' affidavits and declarations are 'presumed to be correct in the absence of any rebuttal evidence proffered by [the d]efendants.'" *Cao*, 727 F. Supp. 3d at 256 n.4 (quoting *Duro v. BZR Piping & Heating Inc.*, No. 10-CV-879, 2011 WL 710449, at *3 (E.D.N.Y. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011)).

3

Defendants Hossin and Almont conduct business within the Eastern District of New York and are sued in their capacities as owners, officers, and/or agents of Republic.  (*Id.* ¶¶ 23, 26.)  Yagui alleges that Hossin and Almont each "possess[] operational control over [Republic], an ownership interest in [Republic], or control[] significant functions of [Republic]."  (*Id.* ¶¶ 24, 27.)  Yagui also alleges that Hossin and Almont "determine[] the wages and compensation of the employees of Defendants, including [Yagui], establish[] the schedules of the employees, maintain[] employee records, and [have] the authority to hire and fire employees."  (*Id.* ¶¶ 25, 28.)

Yagui was employed at Republic from May of 2023 until March 21, 2025.[6]  (Yagui's Mem. 4–5; Yagui Decl. ¶ 10.)  During that time, Yagui worked as a cook and food preparer.

---

[6]  In the Complaint, Plaintiffs also "seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b)."  (Compl. ¶ 14.)  In her motion for default judgment, however, Yagui does not seek to certify this action as a collective action.  (*See* Yagui's Mem.)  The FLSA authorizes collective actions, through which employees can sue on behalf of themselves and other similarly situated employees.  29 U.S.C. § 216(b); *see Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011) (noting that section 216(b) of the FLSA "explicitly authorizes employees, on behalf of themselves and those similarly situated, to bring, under the FLSA, minimum wage, overtime, and anti-retaliation claims").  Where a plaintiff seeking default judgment fails to reiterate their collective action request in a motion for default judgment, courts consider the collective action as abandoned and only consider the claims of the named plaintiffs.  *See, e.g.*, *Lopez v. J&L Sky Contractors Corp.*, No. 24-CV-7661, 2025 WL 1859690, at *18 (E.D.N.Y. July 7, 2025) ("Since [the p]laintiff did not reiterate his collective action certification request in his [m]otion for [d]efault [j]udgment, the [c]ourt considers that request waived.  Accordingly, [the court] only addresses damages with respect to the named [p]laintiff."); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 251 (E.D.N.Y. 2024) (same); *Hinson v. Tammys Nail Utopia LLC*, No. 23-CV-2395, 2024 WL 3611409, at *16–17 (E.D.N.Y. July 31, 2024) (same); *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *9 (E.D.N.Y. July 9, 2024) ("Because [the p]laintiff did not reiterate his collective action certification request in his [m]otion for [d]efault [j]udgment, the [c]ourt considers the collective action abandoned.").  The Court therefore considers the collective action request waived and only addresses the claims of the named Plaintiff, Yagui.  *See Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689, 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because [the p]laintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the [c]ourt considers [the p]laintiff's collective action request waived.").

4

(Compl. ¶ 89.)  Yagui contends that she typically worked more than forty hours per week throughout her employment at Republic.  (*Id.* ¶ 92.)  From May of 2023 until March of 2024, Yagui typically worked 52 hours per week; from March until June of 2024, Yagui typically worked 45 hours per week; from June of 2024 until January of 2025, Yagui typically worked 66 hours per week; and from January of 2025 until March 21, 2025, Yagui typically worked 33 hours per week.  (*Id.* ¶¶ 93–96; Yagui Decl. ¶¶ 14–17.)  Defendants paid Yagui a fixed salary of $750 per week from May of 2023 to June of 2024; $500 per week for two weeks in June of 2023; $1,000 per week from July of 2024 to January of 2025; $780 per week for two weeks in January of 2025; and $20 per hour from February of 2025 to March 21, 2025. (Compl. ¶¶ 99–103; Yagui Decl. ¶¶ 20–24.)  Yagui's pay did not vary when she was required to stay late or work a longer day than her usual schedule.  (Compl. ¶¶ 104–06, 117–20.)  In addition, Yagui worked an additional two to three hours per week from May of 2023 to March of 2024 and an additional ten to twelve hours per week from March of 2024 until January of 2025 without pay.  (*Id.* ¶¶ 105–06.)  Defendants never provided Yagui with a break for meals or otherwise.  (*Id.* ¶ 107.)  Defendants also paid Yagui her wages four to six weeks late from November of 2023 until the end of her employment and failed to pay her half a week of pay.  (*Id.* ¶¶ 110–11.)  Yagui was not required to keep track of her hours from May of 2023 until on or about July of 2024, was never given a statement of wages detailing, among other things, her rate of pay, and Defendants withheld funds from her wages for alleged tax purposes but never provided Yagui with documentation of the tax withholdings.  (*Id.* ¶¶ 108, 112–15, 125, 129–31.)  Defendants also required Yagui to purchase "tools of the trade,"[7] or equipment, using her own funds.  (*Id.* ¶¶ 116, 166–68 (claim for recovery of equipment costs).)

---

[7]  Yagui states the "tools of the trade" she purchased included "panty hose to cover her head while cooking and all sorts of foods or condiments to be able to perform her job as a cook." (Compl. ¶ 116.)

## II.   Discussion

### a.   Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"), there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see Am. Transit Ins. Co. v. Pierre*, No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar. 19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)).  "[T]he court may, on [the] plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (quoting *id.*); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))); *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3 (E.D.N.Y. Nov. 24, 2025) ("When evaluating a plaintiff's application for a default judgment, 'a court is required to accept all [ ] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor.'" (quoting *Romanowicz*, 577 F.3d at 84)).  "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir.

6

2013); *see Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *2 (E.D.N.Y. Sep. 25, 2025) (applying the Rule 55 standard and holding that default establishes liability only where the complaint's well-pleaded allegations state a valid cause of action), *report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Oct. 10, 2025).  However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).  *See Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 19–20 (2d Cir. 2020))).

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Romanowicz*, 577 F.3d at 83 n.6).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-6281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (quoting *Cement &*

7

*Concrete*, 699 F.3d at 234); *Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *2 (E.D.N.Y. Sep. 11, 2024) (quoting same).

###### b. Yagui's motion for default judgment

###### i. Statute of limitations

Yagui argues first, that the statute of limitations under the FLSA is three years because Defendants acted willfully.  (Yagui's Mem. 11.)  In support, Yagui argues that Defendants acted willfully because they "knew or disregarded the fact that their conduct was prohibited by the FLSA" and "failed to investigate whether their compensation policy was legal." (*Id.*)  Second, Yagui alleges Defendants "failed to inform [Yagui] of the required information concerning the relevant wage laws, and paid [Yagui] partially in cash in deliberate disregard of the FLSA and NYLL." (*Id.* at 11–12.)  Third, Yagui argues that under the NYLL, "the limitations period is six years[] regardless of willfulness" and that their damages under the NYLL should therefore "be calculated from the start of [Yagui's] employment, which was less than six years from the filing date." (*Id.* at 12.)

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years.  29 U.S.C. § 255(a); *see also Perry v. City of New York*, 78 F.4th 502, 521 (2d Cir. 2023) (explaining that a jury's finding that the defendants willfully violated the FLSA extended the statute of limitations from two to three years); *Byer v. Periodontal Health Specialists of Rochester, PLLC*, No. 20-CV-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) (summary order) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." (quoting *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014))).  To establish willfulness for purposes of the FLSA statute of limitations, a plaintiff must show that the employer "either knew

8

or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Perry*, 78 F.4th at 520 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)); *see Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) ("[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995))); *Xu v. Ho*, 111 F. Supp. 3d 274, 280 (E.D.N.Y. 2015) (finding willfulness where the defendants did "not dispute that (1) they did not post FLSA and NYLL notices, (2) they made cash payments, and (3) they did not provide overtime pay"); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *4–5 (E.D.N.Y. June 18, 2013) (finding willfulness as a matter of law based on the "[d]efendants' method of compensating nearly all of the [p]laintiffs in cash and their arbitrary issuance of W-2s [to only some employees]").

The NYLL has a six-year statute of limitations.  NYLL § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."); *Tene*, 2025 WL 2731755, at *4 ("[T]he NYLL establishes a six-year limitations period for wage claims." (citing NYLL §§ 198(3), 633(3))); *Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846, 2025 WL 951265, at *4 (E.D.N.Y. Mar. 13, 2025) ("Under the NYLL, the statute of limitations is six years." (citing same)), *report and recommendation adopted*, 2025 WL 948125 (E.D.N.Y. Mar. 28, 2025); *Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 538 (S.D.N.Y. 2024) ("The statute of limitations is six years for claims under the NYLL . . . ." (citations omitted)); *Galindo v. Yummy Foods Deli Corp.*, No. 21-CV-45, 2024 WL 947283, at *6 (S.D.N.Y. Jan. 17, 2024) ("Under the NYLL, the statute of limitations is six years." (citing NYLL § 198(3))), *report and recommendation adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *5 (E.D.N.Y. Sep. 29, 2023) ("[T]he NYLL establishes a six-year limitations period for wage claims." (citing NYLL §§ 198(3), 633(3))),

9

*report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Nov. 30, 2023); *Campos Marin v. J&B 693 Corp.*, No. 19-CV-569, 2022 WL 377974, at *5 (S.D.N.Y. Jan. 21, 2022) ("Claims brought pursuant to the NYLL are subject to a six-year statute of limitations." (citing *Byer*, 2021 WL 3276725, at *2)), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *4 n.5 (E.D.N.Y. Nov. 29, 2021) ("The statute of limitations under the NYLL is six years and does not require a showing of willfulness." (citing NYLL § 663(3))), *aff'd*, No. 22-227, 2023 WL 2395995 (2d Cir. Mar. 8, 2023) (summary order)).

Yagui has sufficiently alleged that Defendants willfully violated the FLSA. In support, Yagui contends that Defendants paid her partly in cash, (Compl. ¶¶ 97, 123), did not provide overtime pay, (*id.* ¶¶ 104–106), and did not provide her with wage statements, (*id.* ¶¶ 108–109, 112–115, 129–130). Yagui also alleges that Defendants did not provide written notices explaining her regular and overtime rates of pay and her pay day, omissions which require the Court to find that Defendants acted willfully. (*Id.* ¶¶ 115, 129, 131.) *See Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) (concluding that allegations that the defendant "failed to post information as required by the FLSA and the NYLL, paid [the plaintiff] in cash, did not have a time-recording system, and did not otherwise require him to record his hours" demonstrated "deliberate conduct in disregard of an employer's obligations"); *Rivera v. Harvest Bakery Inc.*, No. 13-CV-691, 2018 WL 4214337, at *7 (E.D.N.Y. Aug. 17, 2018) ("[E]mployers who have paid employees in cash and erratically issued W-2s have been found to have willfully violated the FLSA." (citation omitted)), *report and recommendation adopted*, 2018 WL 4211301 (E.D.N.Y. Sep. 4, 2018); *Medina v. E. Commc'n Inc.*, No. 16-CV-869, 2018 WL 2899658, at *3 (S.D.N.Y. June 11, 2018) (concluding that the defendants' "violations of the law were willful" where they "were aware of the basic

10

overtime rules," "failed to pay [the p]laintiff at the lawful overtime rate," failed "to provide adequate wage notices and wage statements," and failed "to provide any documentation []such as paystubs[]"); *cf. Alberto v. Rico Pollo #2 Rest. Corp.*, No. 18-CV-4762, 2018 WL 6813057, at *4 (E.D.N.Y. Dec. 26, 2018) ("[I]f the payments in fixed amounts of cash on a weekly basis without credit for overtime are in fact reflective of a policy and practice of defendants, it is hard to imagine a lack of willfulness."). Because the Court finds that Defendants' violations are willful, the three-year statute of limitations applies to Yagui's FLSA claims and a six-year statute of limitations applies to Yagui's NYLL claims.

Accordingly, Yagui's claims are timely with respect to any FLSA violations that occurred on or after May 13, 2022, and any NYLL violations that occurred on or after May 13, 2019, *i.e.*, three years and six years, respectively, prior to the filing of the Complaint on May 13, 2025.

### ii. Defendants are eligible employers under the FLSA and NYLL

Yagui has properly alleged that Defendants are eligible employers under the FLSA and NYLL.

### 1. Republic

Yagui argues that Republic was "directly engaged in interstate commerce," had employees "handling goods in interstate commerce such as vegetables and condiments necessary to perform [her] work that were produced outside of the State of New York," and that during the relevant time period, it "had a gross annual volume of sales of not less than $500,000." (Yagui's Mem. 4; *see also* Yagui Decl. ¶ 11.)

"The FLSA contains two primary worker protections: first, it guarantees covered employees a federal minimum wage; and second, it provides covered employees the right to overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a

11

week." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (citing 29 U.S.C. §§ 206, 207).  To qualify as a covered employee, an employee must be either (1) "engaged in [interstate] commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in [interstate] commerce or in the production of goods for commerce" (enterprise coverage).  29 U.S.C. §§ 206(a), 207(a)(1); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 n.2 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)); *see Marcus v. Lominy*, No. 18-CV-1857, 2022 WL 493688, at *14 (S.D.N.Y. Feb. 17, 2022) ("FLSA coverage applies 'only to employees who are (1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so-called "individual coverage"), or (2) employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called "enterprise coverage").'" (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011))).  The FLSA defines "[e]nterprise engaged in commerce or in the production of goods for commerce," as a business that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an annual gross revenue of at least $500,000.  29 U.S.C. § 203(s)(1); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 205 (E.D.N.Y. 2021) (defining the conditions for enterprise coverage).  As for the annual sales requirement, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA."  *Soto v. Miss Laser*, No. 19-CV-4745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023) (quoting *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-3597, 2021 WL 3888067, at *6 (E.D.N.Y. July 7, 2021)), *report and recommendation adopted*, 2021 WL 3884193 (E.D.N.Y. Aug. 31, 2021)); *see also Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) ("[A]nnual sales exceeding $500,000 . . . is required for relief under the FLSA.").  "Under the FLSA, [the p]laintiff must establish that he or his

12

employer was engaged in interstate commerce." *Calle v. 31 E. 21 Express Inc.*, No. 21-CV-7435, 2026 WL 717286, at *4 (S.D.N.Y. Feb. 23, 2026), *report and recommendation adopted*, 2026 WL 716642 (S.D.N.Y. Mar. 13, 2026); *Maldonado v. Aangan of India LLC*, No. 20-CV-9598, 2024 WL 3910812, at *11 (S.D.N.Y. July 22, 2024) ("Under the FLSA, [the p]laintiffs must establish that they or their employer was engaged in interstate commerce." (first citing *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015); then citing 29 U.S.C. § 207(a)(1); and then citing 29 U.S.C. § 203(s)(1))), *report and recommendation adopted*, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024).

Yagui has established that she is covered by the FLSA because Republic qualifies as an "[e]nterprise engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 203(s)(1). In the Complaint, Yagui alleges that Republic was "directly engaged in interstate commerce" because "numerous items that were used in the [Republic] bar and restaurant on a daily basis [were] goods produced outside of the State of New York," and that Defendants "both individually and jointly, had a gross annual volume of sales of not less than $500,000" in each year of Yagui's employment. (Compl. ¶¶ 38–39.) These allegations are sufficient to establish that Republic qualifies as an enterprise engaged in interstate commerce. *See Galindo*, 2024 WL 947283, at *8 (finding that the plaintiffs met "the threshold for enterprise liability under the FLSA" where they alleged that "numerous items that were used in the deli on a daily basis [were] goods produced outside of the State of New York" and that the defendants "both separately and jointly, had a gross annual volume of sales of not less than $500,000" (alteration in original) (citations omitted)); *Esquivel*, 2023 WL 6338666, at *6 (concluding that allegations that "numerous items that were used in the restaurant on a daily basis [were] goods produced outside of the State of New York" and that the restaurant defendant "had a gross annual volume

13

of sales of not less than $500,000 . . . demonstrate[d] that [the restaurant defendant was] an enterprise engaged in commerce").

### 2.    Hossin and Almont

Yagui argues that Hossin and Almont were her employers under the FLSA and NYLL because they "own[ed], operate[d], and control[led] an [u]pscale [l]atin fusion bar and restaurant . . . under the name 'Republic Latin Fusion,'" and "had the power to hire and fire [Yagui], controlled [the] terms and conditions of [her] employment, and determined the rate and method of [her] compensation in exchange for [Yagui's] services."  (Compl. ¶¶ 21–37; *see also* Yagui Decl. ¶¶ 4–9.)

The FLSA creates liability for any "employer" who violates its terms.  *See* 29 U.S.C. § 207(a)(1).  Under the FLSA, an "employer" is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d); *see also id.* § 203(a) (defining "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons").  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Pierre v. City of New York*, No. 20-CV-5116, 2021 WL 3887912, at *6 (S.D.N.Y. Aug. 31, 2021) ("[U]ltimately, it 'offers little guidance on whether a given individual is or is not an employer.'" (quoting *Herman*, 172 F.3d at 139)).  In making that determination, a court should focus on "whether the alleged employer possessed the power to control the workers in question[], with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citations omitted).

Because the "economic reality" of a relationship drives the analysis as to whether it constitutes an employer-employee relationship for the purposes of the FLSA, the determination

14

must be made on a case-by-case basis in light of the totality of the circumstances and cannot rest

on "technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *see also*

*Sanchez Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383, at *2 (2d Cir. Dec. 17, 2024)

(summary order) ("[E]mployment for FLSA purposes [is] a flexible concept to be determined on

a case-by-case basis by review of the totality of the circumstances." (alterations in original)

(quoting *id.*)).  In determining whether a defendant is an "employer," as defined in the statute,

the Second Circuit has identified four factors to consider, including, "whether the alleged

employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (quoting

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)); *see also Ocampo*

*v. Brown & Appel, LLC*, No. 21-2579, 2022 WL 17684587, at *2 n.2 (2d Cir. Dec. 15, 2022)

(summary order) (quoting same).  These factors do not, however, "comprise a 'rigid rule for the

identification of an FLSA employer,'" but rather provide a guideline "to ensure that the

economic realities test mandated by the Supreme Court is sufficiently comprehensive and

flexible to give proper effect to the broad language of the FLSA." *Irizarry*, 722 F.3d at 105

(quoting *Barfield*, 537 F.3d at 143); *see also Sanchez Juarez*, 2024 WL 5135383, at *2 ("No one

of the four factors standing alone is dispositive" (quoting *Tapia v. Blch 3rd Ave. LLC*, 906 F.3d

58, 61 (2d Cir. 2018))).  A district court is "also free to consider any other factors it deems

relevant to its assessment of the economic realities." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61,

71–72 (2d Cir. 2003).

 Yagui has established that Hossin and Almont meet the four factors relevant to

determining whether they "possessed the power to control the workers in question," *see Herman*,

172 F.3d at 139, and has therefore shown they qualify as employers under the FLSA.  First, Yagui

15

submitted a declaration stating that "Defendants had the power to hire and fire" her, (Yagui Decl. ¶ 5), which establishes the first factor — whether the alleged employer had the power to hire and fire employees. *See Rodriguez v. Lucky Lotto Grocery Deli Corp.*, 2024 WL 3760583, at *9 (E.D.N.Y. July 18, 2024) (finding that the individual defendants qualified as employers under the FLSA where the plaintiff alleged, *inter alia*, that they "managed the day-to-day operations and further had the power to hire and fire employees" (alterations and internal quotation marks omitted)), *report and recommendation adopted*, 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024), *vacated in part on other grounds*, 2026 WL 207960 (E.D.N.Y. Jan. 27, 2026).

Second, Yagui alleges in the Complaint that Hossin and Almont "possess[ed] ownership interests in" and "control[ed] significant functions of" Republic, and "possessed substantial control over [Yagui's] . . . working conditions." (Compl. ¶¶ 24, 27, 32.) Yagui also states in her declaration that "Defendants . . . controlled [the] terms and conditions of [her] employment." (Yagui Decl. ¶ 5.) These allegations are sufficient to establish the second factor — whether the alleged employer controlled employee work schedules or conditions of employment. *See Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *7 (E.D.N.Y. July 9, 2024) (finding that "all four factors support a finding that as a matter of economic reality, the plaintiff had an employer-employee relationship with each defendant" where the plaintiff alleged, *inter alia*, that "the [ ] business's owner and manager[] set [the p]laintiff's work schedule and that each of the [d]efendants controlled the conditions of [the p]laintiff's employment").

Third, Yagui alleges in the Complaint that "[e]ach Defendant possessed substantial control . . . over the policies and practices with respect to the employment and compensation of [Yagui]." (Compl. ¶ 32.) This allegation is sufficient to establish the third factor — whether the alleged employer determined the rate and method of payment. *See Davis v. Navada's Bar & Lounge, LLC*, No. 22-CV-4176, 2024 WL 1531092, at *6 (E.D.N.Y. Mar. 1, 2024) (finding that

16

an individual defendant qualified as an employer under the FLSA where the plaintiff alleged, *inter alia*, that he "controlled employee policies, including decisions regarding payroll, payment policy, and compensation practices"), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 29, 2024).

Fourth, Yagui alleges in the Complaint that Hossin and Almont had the power to "establish[] the schedules of the employees [and] maintain[] employee records." (Compl. ¶¶ 25, 28; *see also* Yagui Decl. ¶ 5.) These allegations are sufficient to establish the fourth factor — whether the alleged employer maintained employment records. Yagui's allegations are sufficient to establish that Hossin and Almont are "employers" covered by the FLSA and NYLL. *See Jacome v. Optical 49, Inc.*, No. 20-CV-2615, 2021 WL 3375134, at *6 (E.D.N.Y. July 9, 2021) (finding that allegations that the individual defendant "owned, operated, and controlled" the corporate defendant and "hired and fired [the p]laintiff, set his working conditions, and determined how and how much [he] was paid" were sufficient to "establish that [the individual and corporate defendants] were joint employers"), *report and recommendation adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021).[8]

---

[8] Because the Court finds that Defendants qualify as "employers" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," Defendants also qualify as Yagui's employers under the NYLL. *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502, 2025 WL 832730, at *7 (E.D.N.Y. Mar. 18, 2025) (quoting *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022)), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 31, 2025).

### iii.    Yagui sufficiently states a NYLL unpaid wage claim

Yagui argues that Defendants violated the minimum wage requirements of the FLSA and the NYLL because the hourly wage, as calculated by Yagui, is lower than the applicable minimum wage.[9]  (Compl. ¶¶ 135–141, 146–150.)

Both the FLSA and the NYLL contain provisions prohibiting employers from paying their employees a rate lower than a certain minimum hourly wage.  29 U.S.C. § 206(b); N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.3.  The minimum wage under the FLSA during Yagui's employment was $7.25 an hour.  29 U.S.C. § 206(a)(1)(C); *see, e.g.*, *Gonzalez v. Rana Poultry Corp.*, No. 24-CV-9592, 2026 WL 211594, at *4 n.1 (S.D.N.Y. Jan. 9, 2026) (applying the $7.25 federal minimum wage to the plaintiff's employment during 2023 and 2024), *report and recommendation adopted*, 2026 WL 209802 (S.D.N.Y. Jan. 27, 2026).  Under the NYLL, the

---

[9]  The Court considers abandoned Yagui's damages claims for spread of hours pay, (*see* Compl. ¶¶ 156–59), recovery of equipment costs or "tools of the trade," (*see id.* ¶¶ 166–68), and violations of the timely payment provision of NYLL § 191, (*see id.* ¶¶ 169–71), because those claims were not raised in her motion for default judgment.  *See Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-CV-5262, 2025 WL 1251297, at *3 n.5 (S.D.N.Y. Apr. 30, 2025) (considering abandoned the plaintiff's FLSA claims of recordkeeping violations and spread of hours wages because they were not mentioned in the motion for default judgment); *Calva v. Vlad Fine Craft Inc.*, No. 23-CV-7414, 2025 WL 1029485, at *3 n.3 (E.D.N.Y. Feb. 11, 2025) (considering abandoned the plaintiff's spread of hours claim because the spread of hours claim was not mentioned in the default judgment motion), *report and recommendation adopted*, 2025 WL 814991 (E.D.N.Y. Mar. 14, 2025); *Perez v. Mesa Azteca Corp.*, No. 23-CV-9374, 2024 WL 5274641, at *1 n.2 (E.D.N.Y. Dec. 5, 2024) (deeming abandoned the plaintiff's spread of hours violations because the violations were not discussed in the default judgment motion papers (citing *Donohue v. Marsh*, No. 19-CV-207, 2022 WL 4111025, at *8 (E.D.N.Y. Sep. 8, 2022))), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Dec. 30, 2024); *Donohue*, 2022 WL 4111025, at *8 ("[The p]laintiff's acknowledgement of all his claims, his specification of the four valid claims, and his defense of those fo[u]r claims alone are sufficient to permit 'a court [to] . . . infer' that the remaining claims have been abandoned." (third alteration in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

minimum wage was $15.00 in 2023, $16.00 in 2024, and $16.50 in 2025.[10]  29 U.S.C.

§ 206(a)(1)(C); NYLL § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1; *see, e.g.*, *Fanus*

*v. 210 E. 51st St., LLC*, No. 24-CV-5162, 2025 WL 1640555, at *5 (E.D.N.Y. Feb. 25, 2025)

(applying minimum wage of $15.00 in 2023 and $16.00 in 2024 under NYLL).

"Where a plaintiff brings claims under both the FLSA and the NYLL, he 'may not

receive a double recovery of back wages' or liquidated damages under both statutes." *Rodriguez*

*v. New Generation Hardware Store Corp.*, No. 22-CV-4422, 2023 WL 1516908, at *2 (S.D.N.Y.

Feb. 3, 2023) (internal quotation marks omitted) (quoting *Hernandez v. JRPAC Inc.*, No. 14-CV-

4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)); *see also Aponte v. Clinton St. Pizza*

*Inc.*, No. 22-CV-3188, 2024 WL 3796806, at *4 (S.D.N.Y. July 19, 2024), ("While [the]

plaintiffs are entitled to recover damages for unpaid wages under both the FLSA and NYLL,

they may 'not recover twice.'" (quoting *Gonzalez Mercedes v. Tito Transmission Corp.*, 2018

WL 7291452, at *4 (S.D.N.Y. Dec. 6, 2018))), *report and recommendation adopted*, 2024 WL

3794335 (S.D.N.Y. Aug. 13, 2024); *Payamps v. M & M Convenience Deli & Grocery Corp.*, No.

16-CV-4895, 2019 WL 8381264, at *11 (E.D.N.Y. Dec. 9, 2019) ("When [the p]laintiffs bring

both FLSA and NYLL minimum wage claims simultaneously, [ ] double recovery is prohibited."

(citation omitted)), *report and recommendation adopted*, Order adopting Report and

Recommendation (E.D.N.Y. Mar. 31, 2020); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d

481, 498 (S.D.N.Y. 2017) (collecting cases).  "If a plaintiff is entitled to damages under both

federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the

---

[10]  The minimum wage rate increases for the relevant time period took place on the last day of the previous year.  *See* NYLL § 652.  From 2016 until December 31, 2023, a different minimum wage applied to small and large employers in New York City.  *See* NYLL § 652(1)(a)(i)–(ii), (1-a)(a).  Yagui does not state whether Defendants are small or large employers, however, for the time period of Yagui's employment in 2023, the minimum wage rate for small and large employers was equivalent.  Beginning on January 1, 2024, the minimum wage rates in New York City apply to every employer regardless of size.  *Id.*

19

statute providing the greatest amount of relief." *Gamero*, 272 F. Supp. 3d at 498 (second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016)).

Yagui brings claims under both the FLSA and the NYLL, but because the minimum wage is higher and the statute of limitations period is longer under the NYLL than the FLSA, the Court assesses Yagui's claims under the NYLL. *See Hernandez*, 2016 WL 3248493, at *31–32 (awarding damages under the NYLL rather than the FLSA because of the higher minimum wage and longer statute of limitations).

Defendants paid Yagui a fixed salary of $750 per week from May 1, 2023 to June 15, 2023; $500 per week from June 16, 2023 to June 30, 2023; $750 per week from July 1, 2023 to June 30, 2024; $1,000 per week from July 1, 2024 to December 31, 2024; $780 per week from January 1, 2025 to January 15, 2025; and $20 per hour from January 16, 2025 to March 21, 2025.[11]  (Compl. ¶¶ 99–103; Yagui Decl. ¶¶ 20–24; Damages Chart.)[12]  Under New York

---

[11]  In the motion of default judgment, Yagui states she earned $20 per hour and did not work overtime from January 15, 2025 until March 21, 2025, the end of her employment. (Yagui's Mem. 9 n.4; Yagui Decl. ¶ 24; Damages Chart.)  Therefore, Yagui states she is not seeking unpaid wage damages for this time period.  (*Id.*)

[12]  Yagui does not allege exact start and end dates for each work period in the Complaint or her Declaration, except for her end date of March 21, 2025.  (*See* Compl. ¶¶ 99–103; Yagui Decl. ¶¶ 20–24.)  However, the Damages Chart provides exact dates, which the Court adopts. (*See* Damages Chart.)  The Damages Chart omits a work period of July 1, 2023 to January 1, 2024.  (*See id.*)  The Court infers this is an oversight because Yagui pleads that she worked during this time period at a rate of $750 per week, and accordingly the Court applies a weekly wage of $750 from July 1, 2023 to January 1, 2024.  (*See* Compl. ¶ 99.)  *Oluwole*, 108 F.4th at 55 n.5 ("[A] court is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor . . . ." (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009))).

The Court also notes two discrepancies between the Damages Chart and the Complaint and Yagui Declaration.  First, Yagui only pleads a weekly pay rate of $780 for two weeks in January of 2025, and $20 per hour for February of 2025 to March 21, 2025, the end of her employment, and does not discuss her wage for the other two weeks in January of 2025.  (*See* Compl. ¶¶ 99–103; Yagui Decl. ¶¶ 20–24.)  However, the Damages Chart provides that Yagui

regulations, an employee's "regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of [forty] hours or the actual number of hours worked by that employee during the work week."[13] N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(b). To calculate the amount of unpaid minimum wages owed to Yagui, the Court calculates the difference between the hourly rate that Yagui was paid and the applicable statutory minimum, then multiplies that amount by forty hours per week, resulting in the amount of unpaid minimum wages that Defendants owe to Yagui for each week

---

earned $780 for the first two weeks in January of 2025, and $20 hourly from January 16, 2025 until the end of her employment. (*See* Damages Chart.) Accordingly, the Court relies on the Damages Chart which states that Yagui earned $20 for the last two weeks of January because Yagui pleads that she worked the full month of January and worked 33 hours per week from January of 2025 until the end of her employment, (Compl. ¶ 96). *See Oluwole*, 108 F.4th at 55 n.5 (drawing all reasonable inferences in the plaintiff's favor). Second, the Damages Chart states that Yagui earned $1,000 per week from June 16, 2024 to June 30, 2024, (Damages Chart), but the Complaint and the Yagui Declaration state that Yagui earned a fixed salary of $750 per week for those two weeks in June of 2024. (Compl. ¶ 100 ("From approximately May 2023 until on or about June 2024, Defendants paid Plaintiff Yagui a fixed salary of $750 per week"), *id.* ¶ 101 ("From approximately July 2024 until on or about January 2025, Defendants paid Plaintiff Yagui $1000 per week."); Yagui Decl. ¶¶ 20, 22 (same).) The Court will rely on the weekly salary pled in the Complaint and Yagui Declaration and finds Yagui earned a fixed salary of $750 per week from June 16, 2024 to June 30, 2024. *See Cao*, 727 F. Supp. 3d at 256 n.4 ("[The p]laintiffs' affidavits and declarations are 'presumed to be correct in the absence of any rebuttal evidence proffered by [the d]efendants.'" (quoting *Duro*, 2011 WL 710449, at *3)). Nevertheless, the Court notes that this discrepancy is irrelevant as the total amount of damages requested by Yagui is lower than the total amount of damages Yagui is entitled to, and the Court will only award the amount requested by Yagui. (*See infra* Section II.b.vi.1.)

[13] The Court applies the method of calculation supplied by New York's Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146 *et seq.*, because Yagui was an employee of a restaurant. *See Borja v. MSK Rest. Corp*, No. 22-CV-6178, 2025 WL 951402, at *15 (E.D.N.Y. Mar. 13, 2025) ("As a[n employee] at a restaurant, the Hospitality Industry Wage Order applies to [the p]laintiff." (citation omitted)), *report and recommendation adopted*, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025); *Perez*, 2024 WL 5274641, at *8 n.6 ("The [c]ourt notes that because [the p]laintiff worked in the hospitality industry, the [c]ourt has considered the applicability of the New York Hospitality Industry Wage Order." (citation omitted)); *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at *8 (E.D.N.Y. Dec. 27, 2023) ("Because [the p]laintiff is a restaurant worker, the Hospitality Industry Wage Order applies." (citations omitted)), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Jan. 30, 2024).

during the relevant period.[14]  The Court then multiplies that amount by the number of weeks in the relevant period to determine the total amount owed to Yagui for each period.

Applying this calculation to Yagui's weekly wages, Defendants paid Yagui an hourly wage higher than the applicable New York minimum wage at all relevant times except for two weeks in June of 2023.  From June 16, 2023 to June 30, 2023, Defendants paid Yagui $12.50 per hour, resulting in $200.00 in unpaid wages for this two-week period: [(($15.00 - $12.50) x 40 hours per week) x 2 weeks = $200.00].[15]  Defendants therefore owe Yagui $200.00 of her unpaid minimum wages.  *See Soto v. Crismeli Deli Grocery Inc.*, No. 19-CV-10053, 2024 WL 3730115,

---

[14]  Under the FLSA and the NYLL, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first [forty] hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 307 (E.D.N.Y. 2025) (quoting *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012)); *see also Pinovi v. FDD Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (E.D.N.Y. July 8, 2015) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."). The Court has no information indicating that the parties had an alternate agreement regarding the number of hours that Yagui's weekly salary was intended to cover.  Accordingly, the Court assumes that Yagui's weekly salary was intended to cover only the first forty hours of her work each week.  Thus, to calculate the hourly rate, the Court divides Yagui's fixed weekly salary by forty hours, consistent with the FLSA's presumption that a weekly salary covers only the first forty hours of work.

[15]  The following chart demonstrates that Defendants paid Yagui an hourly wage higher than the applicable New York minimum wage at all relevant times except for two weeks in June of 2023:

| Range | Weekly Pay | New York Statutory Minimum Wage Rate | Hourly Pay Rate (Weekly Rate / 40 hours) |
|---|---|---|---|
| 5/1/2023 – 6/15/2023 | $750 | $15.00 | $18.75 |
| 6/16/2023 – 6/30/2023 | $500 | $15.00 | $12.50 |
| 7/1/2023 – 12/31/2023 | $750 | $15.00 | $18.75 |
| 1/1/2024 – 6/30/2024 | $750 | $16.00 | $18.75 |
| 7/1/2024 – 12/31/2024 | $1,000 | $16.00 | $25.00 |
| 1/1/2025 – 1/15/2025 | $780 | $16.50 | $19.50 |

at *8 (S.D.N.Y. June 28, 2024) (awarding unpaid minimum wages where the plaintiff demonstrated that the "defendants failed to pay him the required minimum wage for the first forty hours that he worked on and after December 31, 2017"), *report and recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024).

For the time periods when Defendants paid Yagui higher than the applicable New York minimum wage, the Court denies Yagui's motion for default judgment as to the minimum wage claims. *See Lucky Lotto Grocery Deli Corp.*, 2024 WL 3760583, at *12 ("Since [the] plaintiff's regular rate was higher than the applicable minimum wage throughout his employment, the [c]ourt recommends denying [his] claim for unpaid minimum wages."); *Nepomuceno v. Columbia Deli & Grill Inc.*, No. 19-CV-3150, 2024 WL 1363532, at *3 (S.D.N.Y. Mar. 28, 2024) (noting that the court "dismissed, as facially deficient, [the p]laintiff's minimum wage claims, because he alleged in his pleading that he made more than minimum wages").

### iv.   Yagui sufficiently states a NYLL overtime claim

Yagui argues that Defendants violated the overtime provisions of the FLSA and the NYLL. (Compl. ¶¶ 142–45; 151–55; Yagui's Mem. 9–10.) In support, Yagui asserts she worked 52 hours per week from May 1, 2023 until March 15, 2024; 45 hours per week from March 16, 2024 to June 15, 2024; and 66 hours per week from June 16, 2024 until December 31, 2024.[16] (Compl. ¶¶ 93–96; Yagui Decl. ¶¶ 14–17; Damages Chart.)[17]

Both the FLSA and the NYLL provide that employees must be "compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of

---

[16] Yagui does not assert an overtime claim for the time period at the end of her employment when she was paid an hourly wage and worked less than 40 hours per week, from January 1, 2025 to March 21, 2025. (*See* Yagui's Mem. 10 n.7.)

[17] The Court primarily relies on the dates of employment provided in the Damages Chart, with the exceptions discussed *supra*, for the start and end dates for the employment periods.

forty [hours] per week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *Cruz v. Sammy Gourmet Deli 3 Corp.*, No. 25-CV-1356, 2026 WL 804018, at *4 (E.D.N.Y. Mar. 2, 2026) (quoting *Nakahata*, 723 F.3d at 200), *report and recommendation adopted*, 2026 WL 803079 (E.D.N.Y. Mar. 23, 2026). Both statutes provide that the regular rate is either the actual rate at which the employee is paid or the statutory minimum wage, whichever is higher. *See* 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA); *see also Silva v. Legend Upper W. LLC*, No. 16-CV-3552, 2021 WL 4197360, at *10 (S.D.N.Y. Sep. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at one and one-half times the minimum wage). Under the NYLL, a "regular rate" is either the employee's hourly pay or, if the employee is paid on "any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16; *see, e.g.*, *Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561, 2025 WL 437929, at *6 (E.D.N.Y. Feb. 8, 2025) (computing a non-hourly worker's regular rate by dividing weekly earnings by hours worked), *on reconsideration in part*, 2025 WL 2371048 (E.D.N.Y. Aug. 14, 2025). "Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap." *Payamps*, 2019 WL 8381264, at *12; *see Gamero*, 272 F. Supp. 3d at 498 (collecting cases); *see also Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929, 2025 WL 99108, at *3 (S.D.N.Y. Jan. 14, 2025) (recognizing as settled that plaintiffs may recover under either FLSA or NYLL, but not both, for the same period), *report and recommendation adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025). Because the overtime wage rate is higher and the statute of limitations longer under the NYLL, the Court assesses Yagui's overtime claim under the NYLL.

24

*See Gamero*, 272 F. Supp. 3d at 498 ("If a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." (second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun*, 2016 WL 1587242, at *2)).

The NYLL overtime provision applies to Yagui's employment from May 1, 2023 to December 31, 2024 when she worked more than 40 hours per week. From May 1, 2023 to June 15, 2023, Yagui's regular rate of pay of $18.75 per hour results in an overtime premium of $28.13 per hour: ($18.75 per hour x 1.5). Yagui worked 12 overtime hours per week during this period of 6 weeks and 4 days, resulting in a total of $2,218.25 of unpaid overtime wages: [($28.13 per hour x 12 hours per week) x 6 weeks and 4 days = $2,218.25]. From June 16, 2023 to June 30, 2023, Yagui's regular rate of pay was lower than the New York statutory minimum wage of $15.00, and therefore the Court applies the statutory minimum of $15.00 for the regular rate of pay. $15.00 per hour results in an overtime premium of $22.50: ($15.00 per hour x 1.5). Yagui worked 12 overtime hours per week during this 2-week and 1-day period, resulting in a total of $608.57.00: [($22.50 per hour x 12 hours per week) x 2 weeks and 1 day = $608.57]. From July 1, 2023 to March 15, 2024, Yagui's regular rate of pay of $18.75 per hour results in an overtime premium of $28.13 per hour: ($18.75 per hour x 1.5). Yagui worked 12 overtime hours per week during this period of 37 weeks, resulting in a total of $12,489.72 of unpaid overtime wages: [($28.13 per hour x 12 hours per week) x 37 weeks = $12,489.72]. From March 16, 2024 to June 15, 2024, Yagui's regular rate of pay of $18.75 per hour results in an overtime premium of $28.13 per hour: ($18.75 per hour x 1.5). Yagui worked 5 overtime hours per week during this period of 13 weeks and 1 day, resulting in a total of $1,848.54 of unpaid overtime wages: [($28.13 per hour x 5 hours per week) x 13 weeks and 1 day = $1,848.54]. From June 16, 2024 to June 30, 2024, Yagui's regular rate of pay of $18.75 per hour results in an overtime

25

premium of $28.13 per hour: ($18.75 per hour x 1.5).  Yagui worked 26 overtime hours per week during this period of 2 weeks and 1 day, resulting in a total of $1,567.24 of unpaid overtime wages: [($28.13 per hour x 26 hours per week) x 2 weeks and 1 day = $1,567.24].  From July 1, 2024 to December 31, 2024, Yagui's regular rate of pay of $25.00 per hour results in an overtime premium of $37.50 per hour: ($25.00 per hour x 1.5).  Yagui worked 26 overtime hours per week during this period of 26 weeks and 2 days, resulting in a total of $25,628.57 of unpaid overtime wages: [($37.50 per hour x 26 hours per week) x 26 weeks and 2 days = $25,628.57].[18]

Defendants therefore owe Yagui a total of $44,360.89 in lost wages for her unpaid overtime claims.

### v.   Yagui fails to sufficiently state Wage Theft Prevention Act claims

Yagui alleges she is entitled to statutory damages under New York law because "Defendants never provided [her] with a wage notice or with accurate wage statements" in

---

[18]  The following chart relays the same information in the paragraph above.

| Range | Regular Rate (Weekly Rate / 40 hours) | Overtime Rate per Hour | Hours of Overtime | Number of Weeks | Overtime Owed |
|---|---|---|---|---|---|
| 5/1/2023 – 6/15/2023 | $18.75 | $28.13 | 12 | 6 weeks and 4 days | $2,218.25 |
| 6/16/2023 – 6/30/2023 | Statutory minimum $15 | $22.50 | 12 | 2 weeks and 1 day | $608.57 |
| 7/1/2023 – 3/15/2024 | $18.75 | $28.13 | 12 | 37 weeks | $12,489.72 |
| 3/16/2024 – 6/15/2024 | $18.75 | $28.13 | 5 | 13 weeks and 1 day | $1,848.54 |
| 6/16/2024 – 6/30/2024 | $18.75 | $28.13 | 26 | 2 weeks and 1 day | $1,567.24 |
| 7/1/2024 – 12/31/2024 | $25.00 | $37.50 | 26 | 26 and 2 days | $25,628.57 |

26

violation of the New York Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3). (Yagui's Mem. 10.)

"As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sep. 30, 2014)).  This notice must include, among other things: (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary."  NYLL § 195(1)(a); *see Lucky Lotto Grocery Deli Corp.*, 2024 WL 3760583, at *13 (citing NYLL §§ 195(1)(a), 195(3)); *see also Mendez*, 564 F. Supp. 3d at 219 (describing the required contents of the wage notice under NYLL § 195(1)).  "Under Section 195(3), employers must give their employees accurate wage statements that include the dates and hours worked, the rate of pay and additional details."  *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020) (citing NYLL § 195(3)); *see Sanango v. Ruby Nails Tarrytown, Inc.*, No. 20-CV-8245, 2023 WL 2707329, at *4–5 (S.D.N.Y. Mar. 30, 2023) ("[NYLL § ]195(3) 'requires that employers provide employees with certain wage statement information 'with every payment of wages.'" (quoting NYLL § 195(3))).  An employee who is not given these statements may "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  NYLL § 198(1-d). "Pursuant to a 2015 amendment to the law, statutory damages for failure to provide initial hire

27

notices [under NYLL § 195(1)] are $50 per day up to a maximum recovery of $5,000.00 per employee." *Ramos v. CJ Contractor Servs., Inc.*, No. 23-CV-274, 2024 WL 3954330, at *5 (S.D.N.Y. Aug. 2, 2024) (citing NYLL § 198(1-b)), *report and recommendation adopted*, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024); *see Salamanca v. ABC Corp.*, No. 19-CV-1335, 2021 WL 3275902, at *7 (E.D.N.Y. July 15, 2021) ("After February 27, 2015, violations of [NYLL §] 195(1) carry damages of $50 per workday, up to a maximum of $5,000." (citing NYLL § 198(1-b)), *report and recommendation adopted*, 2021 WL 3269089 (E.D.N.Y. July 30, 2021).

The Second Circuit has clarified that a plaintiff seeking statutory damages for WTPA notice/statement violations in federal court must allege a concrete injury causally linked to the missing or inaccurate notices. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) ("[A] plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."); *id.* at 305–06 (Article III requires a concrete injury even for statutory violations); *id.* at 311 ("Without plausible allegations that [the plaintiff] suffered a concrete injury because of [the defendant's] failure to provide the required notices and statements, [the plaintiff] lacks standing to sue for that statutory violation."); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443–44 (2d Cir. 2022) (holding that a bare statutory violation is insufficient for standing and that a plaintiff must allege a concrete, particularized injury beyond the asserted regulatory noncompliance); *Vazquez Romero v. La Morenita Fruit Market Corp.*, No. 23-CV-6300, 2026 WL 687228, at *8 n.3 (E.D.N.Y. Mar. 11, 2026) (applying *Guthrie* and finding the plaintiff failed to allege a concrete injury from the lack of accurate notices because the plaintiff only alleged that the defendants "failed to post at the workplace . . . the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL." (citation omitted)), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 31, 2026); *Brathwaite*, 2025 WL 99108, at *7 (applying

28

*Guthrie* and dismissing § 195 claims where the "complaint does not allege a concrete downstream consequence of the failure to receive payroll notices or wage statements," and explaining that "confusion and uncertainty about" compensation are "hypothetical, speculative concern[s] . . . insufficient to establish standing in a suit for damages" (citations and internal quotation marks omitted)).

Federal courts in this Circuit have further underscored that, because "in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation," *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021), a plaintiff asserting a WTPA claim must show a real injury beyond the employer's noncompliance. "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (alteration in original) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

Yagui lacks Article III standing with respect to her WTPA wage notice and wage statement claims because she has not pled a concrete injury causally linked to the missing or inaccurate notices. *See Guthrie*, 113 F.4th at 308 (requiring that the "plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" for Article III standing). Yagui only alleges that "Defendants have failed to provide [her] with a written notice, in English and in Spanish ([Yagui's] primary language), of [her] rate of pay, regular pay day, and such other information," and "Defendants have not provided [her] with wage statements upon each

29

payment of wages" "accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked." (Compl. ¶¶ 113–15, 161, 164.) Yagui also alleges Defendants withheld funds from her wages "claiming such withholdings were for tax purposes; however, Defendants never provided [her] with any document outlining the tax withholdings they were taking from [her] wages." (Yagui Decl. ¶ 33.) Although Yagui alleges that Defendants willfully did not provide the wage notice or wage statements "in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of [Yagui's] relative lack of sophistication in wage and hours laws," (Compl. ¶¶ 125–26), Yagui has neither alleged any "concrete" or "particularized" injury, nor has she provided any evidence that she has suffered an injury or any "downstream consequences" resulting from Defendants' alleged failure to provide wage notices and statements, (*see id.* ¶¶ 125–131; Yagui's Mem. 10–11). *See TransUnion*, 594 U.S. at 442 ("[T]he plaintiffs have identified no 'downstream consequences' from failing to receive the required information." (citation omitted)); *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 295 (E.D.N.Y. 2024) (dismissing the plaintiffs' wage notice and wage statement claims because the plaintiffs "merely allege[d] that [the d]efaulting [d]efendants failed to provide them with wage notice and wage statements, averring that these failures entitle them to statutory damages," and as a result, the plaintiffs' claims "d[id] not demonstrate Article III standing"); *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at *12 (E.D.N.Y. Dec. 27, 2023) (recommending dismissal of the plaintiff's wage statement claim in default judgment motion for lack of subject matter jurisdiction because he "failed to allege any facts about injuries that flowed from [the d]efendants' alleged [WTPA] violation" and "only allege[d] that he was not provided wage notices and wage statements, and that such failure violated the law"), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Jan. 30, 2024); *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568, at *4–7 (E.D.N.Y. Feb. 24, 2023) (dismissing NYLL wage

statement claim where the "[p]laintiff did not link any injury-in-fact that he personally experienced to [the d]efendants' failure to provide statutory notices under the NYLL"), *aff'd*, 113 F.4th 300 (2d Cir. 2024); *cf. Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at \*17 (S.D.N.Y. Mar. 11, 2024) (finding that a class of plaintiffs had standing to bring NYLL wage statement claims because they sufficiently alleged injury arising out of the defendants' inaccurate reporting of the hours worked by the class as the "reporting obfuscated the fact of [the d]efendants' alleged time-shaving and hindered [the p]laintiffs' ability, at the time they were paid, to discover their underpayment and advocate for themselves").  Accordingly, Yagui lacks standing to bring wage notice and wage statement claims, and the Court dismisses Yagui's motion for default judgment as to her WPTA wage notice and wage statement claims.  *See Guthrie*, 113 F.4th at 308 ("[U]nless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195."); *Giancotti v. Pizzarotti LLC*, No. 23-CV-3457, 2025 WL 2607606, at \*18 (S.D.N.Y. Sep. 9, 2025) (denying summary judgment and dismissing without prejudice NYLL wage notice and wage statement claims because plaintiff failed "to show a causal connection between the lack of a wage notice or a wage statement and any downstream harm" and relied on a "conclusory assertion" of injury); *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d. 319, 341 (S.D.N.Y. 2022) (dismissing a NYLL wage statement claim for failure to "allege an injury in fact sufficient to establish standing"); *Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at \*7 (E.D.N.Y. Mar. 30, 2022) (dismissing NYLL wage statement claim for lack of standing where plaintiffs failed to allege a cognizable injury).

31

**vi.    Defendants owe Yagui $71,211.26 in damages under the NYLL, $4,790.00 in attorneys' fees, and $651.00 in costs**

Yagui seeks $35,605.63 in unpaid overtime compensation, plus an equal amount in liquidated damages for a total of $71,211.26 in compensatory and liquidated damages. (Yagui's Mem. 11–13.) Yagui also seeks $5,275 in attorneys' fees and $651.00 for costs and expenses in the prosecution of the matter. (*Id.* at 13–14.)

**1.    Actual damages for unpaid minimum and overtime wages**

As set forth above, Yagui is entitled to a total of $44,560.89 in actual damages for unpaid minimum and overtime wages, consisting of $200.00 in unpaid minimum wages and $44,360.89 in overtime wages. (*See supra* Sections II(b)(iii)–(iv).) However, Yagui requests $35,605.63 in actual damages for unpaid minimum and overtime wages, and the Court will award only the amount requested by Yagui. *See Rueda Avila v. A & G Iron Works Corp*, No. 25-CV-1791, 2026 WL 183692, at *13 (E.D.N.Y. Jan. 23, 2026) (awarding only the amount requested by the plaintiff even though the plaintiff was entitled to more); *Reyes v. Bellerose Halal Meat Inc.*, No. 21-CV-6413, 2025 WL 2664258, at *13 (E.D.N.Y. Sep. 17, 2025) (same); *Pena v. Metro. Wireless Anandpur Inc.*, 21-CV-2239, 2021 WL 5054368, at *3 n.1 (S.D.N.Y. Nov. 1, 2021) (awarding amount requested by the plaintiff even though "[the p]laintiff's request of $1,380.91 appears to underestimate the amount of overtime[] wages due"); *Trs. of the Sheet Metal Workers' Int'l Ass'n Loc. Union No. 28 Benefit Funds v. Maximum Metal Mfrs., Inc.*, No. 14-CV-2890, 2015 WL 8031380, at *3 (S.D.N.Y. Dec. 7, 2015) (awarding the plaintiff's requested amount); *Leggett & Platt, Inc. v. CM Mattress, LLC*, No. 14-CV-3277, 2015 WL 7281635, at *2 ("Where default has been noted, [the] plaintiff's recovery is limited to the amount requested in its [m]otion for [d]efault [j]udgment." (first citing Fed. R. Civ. P. 54(c); and then citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993))).

32

## 2. Liquidated damages

Yagui seeks liquidated damages under both the FLSA and NYLL. (Compl. ¶¶ 13, 132; Yagui's Mem. 12–13).

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260. *See St Louis v. Sugar Rush Inc.*, No. 23-CV-6373, 2025 WL 2585569, at *13 (E.D.N.Y. Aug. 18, 2025) ("Under the FLSA, an employee is entitled to recover 'the amount of their unpaid minimum wages, or their unpaid overtime compensation' and 'an additional equal amount as liquidated damages.'" (quoting 29 U.S.C. § 216(b))), *report and recommendation adopted*, 2025 WL 2576431 (E.D.N.Y. Sep. 5, 2025); *Bi v. Xia*, No. 18-CV-23, 2024 WL 306693, at *3 (D. Conn. Jan. 3, 2024) ("Under the FLSA, successful plaintiffs may collect 'the payment of wages lost and an additional equal amount as liquidated damages.'" (quoting same)), *aff'd*, No. 24-234, 2025 WL 1733682 (2d Cir. June 23, 2025) (summary order); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of wages lost and an additional equal amount as liquidated damages . . . .'" (quoting same)). "The employer bears the burden of proving good faith . . . ." *Herman*, 172 F.3d at 142 (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *Ruiz v. JHDHA, Inc.*, No. 23-CV-7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024) ("The employer bears the burden of proving good faith and reasonableness to avoid an award of liquidated damages." (citing *Herman*, 172 F.3d at 142)); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting same)).

33

"To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman*, 172 F.3d at 142; *see also Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 125 (awarding liquidated damages where the defendants "voluntarily underpaid [the p]laintiffs" and failed to appear). "Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of wages found to be due,' 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" *Hernandez*, 2016 WL 3248493, at *34 (quoting NYLL § 198(1-a)). "[C]ourts have not substantively distinguished the federal standard [under the FLSA] from the current state standard [under the NYLL] of good faith." *Stefanovic v. Old Heidelberg Corp.*, 18-CV-2093, 2022 WL 3928370, at *5 (S.D.N.Y. Aug. 31, 2022) (second and third alterations in original) (quoting *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)).

Defendants have not appeared in this action and have not proffered any good faith basis or explanation for their underpayment of wages. Because Yagui cannot recover under both the FLSA and the NYLL for the same conduct, *see Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("[T]he NYLL and FLSA [do] not allow[] duplicative liquidated damages for the same course of conduct."), and under the NYLL an employee may receive both liquidated damages and prejudgment interest, the Court awards liquidated damages to Yagui under the NYLL. *See* NYLL § 198(1-a) (providing that the plaintiff in a wage claim under the NYLL may recover "prejudgment interest . . . and . . . an additional amount as liquidated damages"); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (awarding both liquidated damages and prejudgment interest under the NYLL); *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141, 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) ([W]here a plaintiff has already received an award of FLSA liquidated damages . . . the plaintiff is [ ] entitled to an award of

prejudgment interest only on [damages under the NYLL that do not overlap with those under the FLSA] for which liquidated damages pursuant to the FLSA were not assessed." (fourth alteration in original) (quoting *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 7186791, at *4 (E.D.N.Y. Dec. 7, 2020))).

The Court awards Yagui liquidated damages for her unpaid minimum wage and overtime pay under the NYLL statutes, equal to "one hundred percent of the total of . . . underpayments found to be due" to Yagui.  NYLL § 663(1); *see also Paulino v. S & P Mini Mkt. Corp.*, 791 F. Supp. 3d 457, 468 (S.D.N.Y. July 15, 2025) ("The NYLL allows employees to recover 'an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due' unless the employer 'proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" (citing NYLL § 198(1-a))); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 254–55 (E.D.N.Y. 2024) (similar); *Soto*, 2024 WL 3730115, at *8 ("The amount of liquidated damages is equal to 100% of the amount owed to the [p]laintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." (quoting *Villanueva v. 179 Third Ave Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021))).  Accordingly, the Court awards Yagui $35,605.63 in liquidated damages, equal to the total amount Yagui requested for unpaid minimum and overtime wages.

### 3.    Prejudgment interest

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules."  *See Rana*, 887 F.3d at 123 (stating that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules").  The applicable interest rate is 9% per annum.  *See Ramirez v. Lin*, 830 F. App'x 672, 673 (2d Cir.

2020) (applying a 9% interest rate to prejudgment interest under the NYLL (citation omitted));

*Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sep. 25,

2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated

damages, calculated at 9% per year." (citations omitted)); *Tarax v. Blossom W. Inc.*, No. 19-CV-

6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a

successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation

omitted)); *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12

(E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004).  "Interest shall be computed

from the earliest ascertainable date the cause of action existed," or "[w]here such damages were

incurred at various times, interest shall be computed upon each item from the date it was

incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R.

§ 5001(b).[19]

---

[19]  Yagui requests prejudgment interest in her Complaint, (*see* Compl. 29), but fails to request it in her motion for default judgment, (*see generally* Yagui's Mem.).  Nevertheless, the Court still awards prejudgment interest.  *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) (reversing the district court's denial of prejudgment interest on a New York state law claim because "[S]ection 5001 imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law." (citing *Indu Craft, Inc. v. Bank of Baroda,* 87 F.3d 614, 617 (2d Cir.1996)); *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 694 (2d Cir. 1983) ("In light of § 5001(a)'s mandatory nature, courts have held that a plaintiff's failure to pursue his request for prejudgment interest during the trial or even to demand such interest in his complaint does not amount to a waiver of his right to interest." (citations omitted)); *id.* at 693–94 (awarding prejudgment interest in a securities fraud action despite the plaintiff's failure to request it at trial); *Borja v. MSK Rest. Corp.*, No. 22-CV-6178, 2026 WL 794220, at *6 (E.D.N.Y. Feb. 13, 2026) (awarding prejudgment interest where the plaintiff requested it in their complaint but failed to discuss it in the motion for default judgment because "an award of prejudgment interest on NYLL claims is mandatory" (first citing N.Y. C.P.L.R. § 5001; and then citing *Gussack Realty Co.*, 224 F.3d at 93)), *report and recommendation adopted*, 2026 WL 792471 (E.D.N.Y. Mar. 19, 2026); *Poplawski v. Metroplex on the Atlantics, LLC*, No. 11-CV-3765, 2013 WL 12438839, at *10 (E.D.N.Y. Apr. 3, 2013) (awarding prejudgment interest on NYLL claims where the plaintiffs "seek interest on damages awarded for their claims" in the complaint but the motion for default judgment "fails to request or set forth prejudgment interest"), *report and recommendation adopted*, 2013 WL 12438843 (E.D.N.Y. Apr. 26, 2013); *see also Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 133–34 (4th Cir. 2015) (reversing the

36

Because Defendants failed to pay Yagui earned wages over a period of several months, the Court calculates prejudgment interest from a reasonable intermediate date. *See Feuer*, 2020 WL 401787, at *12 n.22 (calculating prejudgment interest on unpaid wages from a date halfway between the first and last days of the employee's employment); *Ying Ying Dai*, 490 F. Supp. 3d at 662 (calculating prejudgment interest on unpaid wages from the midpoint of the first and last date of underpayment); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (determining prejudgment interest as the "midway point between when plaintiff[s] began and ceased working for defendant[s]." (alterations in original) (citations and internal quotation marks omitted)). Defendant employed Yagui from approximately May of 2023 to March 21, 2025. (Compl. ¶ 19; Yagui Decl. ¶ 10.) The Court therefore calculates interest from April 10, 2024, the date halfway between May 1, 2023 and March 21, 2025. Yagui is entitled to prejudgment interest on her wage claim damages from April 10, 2024 until the date judgment is entered, at a rate of $8.78 per day.[20]

### 4. Attorneys' fees

Yagui seeks an award of $5,275 in attorneys' fees, which represents 12.3 hours of work performed on this case by the law firm Michael Faillace & Associates, P.C. (Yagui's Mem. 13; Attorneys' Fees.)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL §§ 198(1), (1-a); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted). Trial courts are afforded "considerable

---

district court's denial of prejudgment interest and holding the plaintiffs were entitled to prejudgment interest on NYLL claims "as a matter of right" and that the district court lacked discretion to deny such interest under NYLL §§ 198(1–a), 663(1) and N.Y. C.P.L.R. § 5001(a)).

[20] The Court calculates prejudgment interest as follows: ([$35,605.63 in unpaid minimum and overtime wages] × [9% interest /365 days]).

discretion in determining what constitutes reasonable attorney's fees in a given case . . . ."
*Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105–06 (2d Cir. 2022) (quoting *Barfield*, 537 F.3d at 151); *see Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (quoting same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Ortiz*, 843 F. App'x at 359 (quoting *Lilly*, 934 F.3d at 232). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher*, 948 F.3d at 606–07 ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting same)). "Courts look to '[b]oth "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint.'"

38

*Holick*, 48 F.4th at 106 (quoting *Barfield*, 537 F.3d at 152).  Other factors a court should

consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *id.* at 190 (clarifying that district courts should consider, among

others, the factors laid out in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974)); *see Lilly*, 934 F.3d at 229–30 (explaining *Arbor Hill* factors).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] —

the product of a reasonable hourly rate and the reasonable number of hours required by the

case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154,

166 (2d Cir. 2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A.

ex rel. Winn*, 559 U.S. 542, 550–53 (2010)); *see SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*,

No. 23-7313, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (summary order) (quoting *Millea*,

658 F. 3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according

to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the

reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d

at 183–84)); *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021)

(summary order) ("Courts calculate a presumptively reasonable fee under § 1988 by

'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking

account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)).  The fee applicant

bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")); *see also Godinger*, 2024 WL 4145724, at *6 (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation).

### A.    Reasonable hourly rate

Yagui seeks attorneys' fees at the hourly rate of $450 for attorney Michael Faillace, who prepared the Complaint, and an hourly rate of $400 for attorney Jesse Barton, who prepared the default judgment motion. (Yagui's Mem. 14; Attorneys' Fees.)  In support, Yagui states that Faillace's rate is "his standard billing rate for matters paid on an hourly basis."  (Yagui's Mem. 14.)  Faillace is a managing member of the firm, "has been in practice since 1983," taught employment discrimination as an adjunct professor at two law schools, and "is a nationally renowned speaker and writer on employment law."  (*Id.* at 14–15.)  Barton became an attorney in 2012 and has subsequently been working in labor and employment law.  (*Id.* at 14.)  Since joining Michael Faillace & Associates in 2015, Barton works Of Counsel, and is "responsible for all aspects of the firm's employment docket in federal court and has successfully prosecuted wage and hour trials in [the Eastern District of New York] and the Southern District [of New York]."  (*Id.*)

40

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (second and third alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see Agudath*, 2023 WL 2637344, at *2 (quoting same). Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *Chaparro*, 2021 WL 5121140, at *1–2 (affirming district court decision on reasonableness of hourly rate in accordance with forum rule). The prevailing rates for experienced attorneys in the Eastern District of New York cases range from

41

approximately $100 to $450, depending on experience level.  *See Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (noting rates for attorneys in E.D.N.Y. cases ranged from $300–$400 (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-CV-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010)))); *Vazquez Romero*, 2026 WL 687228, at *15 ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (quoting *Cao*, 727 F. Supp. 3d at 299)); *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242, 2025 WL 968586, at *16 (E.D.N.Y. Mar. 31, 2025) (assessing hourly rate for Of Counsel based on wage-and-hour litigation experience and market rates in the Eastern District); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. County of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))); *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073, 2023 WL 1072952, at *5 (E.D.N.Y. Jan. 9, 2023) (evaluating hourly rate for Of Counsel based on declaration regarding prior litigation experience and years of experience), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023).  Although some courts in this District "have recognized slightly higher ranges . . . of $300–$450 per hour for partners," *Harris v. Best Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *8 (E.D.N.Y. Aug. 26, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 4737056 (E.D.N.Y. Sep. 27, 2019), the cases in which the upper limit of this range has been awarded have involved "attorneys with 20 or more years of experience," *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139, 2014 WL 1236619, at *6–7 (E.D.N.Y. Mar. 25, 2014) (collecting cases).  *See, e.g.*, *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir.

2019) (noting that district courts have "conclud[ed] that approximately $[]300 to $[]450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266, 2025 WL 405986, at *6–7 (E.D.N.Y. Feb. 5, 2025) (applying the forum rule and finding a $450 partner rate reasonable given counsel's experience and prevailing Eastern District market rates); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sep. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (alteration in original) (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sep. 22, 2022))).  In the Eastern District of New York, "senior associates are typically awarded $200 to $325 per hour." *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Shuford*, 2024 WL 865989, at *3.

"[T]he fee applicant [has the burden] to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 61 (E.D.N.Y. 2024) (second alteration in original) (quoting *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)); *see also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (explaining that district courts must ground their rate determinations in

43

the evidentiary record rather than relying on assumptions based on the proof submitted).  When the evidentiary submission does not substantiate the level of experience necessary to support the proposed rates, courts reduce the requested compensation.  *See Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at *5 (S.D.N.Y. May 11, 2020) ("Where a moving party 'fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.'" (quoting *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y. 2010))), *report and recommendation adopted*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020); *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *19 (E.D.N.Y. Oct. 1, 2019) ("[W]hen a party fails to provide information to support the hourly rate of an associate, courts may reduce the hourly rate to the lowest associate rate in the range."), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300–02 (E.D.N.Y. 2012) (finding the submitted declaration, which only "provide[d] some background on his experience in civil rights litigation," stated he had worked "on unspecified matters," and detailed experience at two firms which did not "have a practice in civil rights or housing discrimination litigation," did not demonstrate relevant litigation experience or a background consistent with the senior-level rate sought but that "much closer to a junior associate than the senior partner whose hourly rate he hope[d] to claim," and thus reduced the requested rate to that of a junior associate).  Courts have also determined that information such as an attorney's admission date or title does not alone establish entitlement to the higher end of senior-level market rates.  *See UFCW Loc. One Health Care Fund v. Greene Great American, Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *6 n.5 (N.D.N.Y. May 27, 2025) ("Given [the attorney's] 28 years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional

experience, the [c]ourt awards the high end of the associate rate."); *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sep. 15, 2022) ("[I]n the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." (quoting *Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021))), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sep. 30, 2022); *Tjartjalis v. Pro. Claims Bureau, Inc.*, No. 14-CV-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) ("Although [the attorney was] presumably [ ] a partner at the new firm, that title does not, in and of itself, confer him with a higher level of experience warranting a higher hourly rate."). "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Melo*, 750 F. Supp. 3d at 61–62 (quoting *Brown*, 2014 WL 1237448, at *5) (providing that although counsel had "been admitted to practice since 1992 and is counsel at the firm," "no other information [was] provided about him," and "[t]he affidavit [did] not provide information as to [the attorney's] experience," the court found "the requested rate excessive" and instead awarded $325 per hour as "appropriate" and "at the high end for senior associates").

The Court finds that Faillace's and Barton's attorneys' rates are on the high end of the spectrum for FLSA cases in view of the mistakes in the Complaint and the default judgment motion. While Faillace has been practicing for over 30 years since 1983 and he taught, speaks, and writes on employment law consistently, (Yagui's Mem. 14–15), other courts in this Circuit have found Faillace's rate unreasonable and adjusted his rate to $400 or lower, especially in cases without extensive or complex litigation or where courts found pleading errors. *See Mendez v. Sam Nat. Deli Corp.*, No. 25-CV-1692, 2025 WL 3089308, at *2 (E.D.N.Y. Nov. 5, 2025) (noting Faillace's recent two-year suspension from practice in the Eastern and Southern Districts

45

of New York until late 2023 for, *inter alia*, "repeatedly taking fees from settlements in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries)" and reducing his hourly rate from $450 to $325) (quoting *Garcia Lazaro v. Best Fish Mkt. Corp.*, No. 21-CV-5305, 2022 WL 280768, at *2 (E.D.N.Y. Jan. 31, 2022))); *Gautier v. 3 Way Rest., Inc.*, No. 20-CV-3776, 2025 WL 2807124, at *10 (S.D.N.Y. May 8, 2025) (finding Faillace's rate "excessive" and reducing it from $450 to $400), *report and recommendation adopted*, 2025 WL 2806606 (S.D.N.Y. Oct. 2, 2025); *Escobar v. Mahopac Food Corp.*, No. 19-CV-510, 2025 WL 934906, at *17 (E.D.N.Y. Mar. 5, 2025) (noting Faillace's experience as a litigator but also his two-year suspension and reducing his attorney's fee rate from $450 to $375), *report and recommendation adopted*, 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025); *Martinez v. West Side Pizza LLC*, No. 18-CV-5834, 2024 WL 4494884, at *9 (S.D.N.Y. Apr. 4, 2024) ("Courts have routinely found that the hourly rates charged by [ ]Faillace and his firm are excessive" and reducing Faillace's award from $450 to $400), *report and recommendation adopted as modified sub nom.*, *Perez v. W. Side Pizza LLC*, 2024 WL 4494432 (S.D.N.Y. Oct. 11, 2024); *Olivares v. 1761 Fonda Mex. Magico LLC*, No. 17-CV-1082, 2022 WL 4534458, at *11–12 (S.D.N.Y. Sep. 28, 2022) (collecting cases) (reducing Faillace's rate from $450 to $400); *Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 333–34 (S.D.N.Y. 2021) (noting Faillace's work product was "sloppy, incomplete, and internally contradictory" and reducing his attorney's fee from $450 to $300), *report and recommendation adopted*, No. 20-CV-5409, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022). In addition, while Yagui's memorandum lists Faillace's qualifications and experience in support of his hourly rate, it fails to mention his two-year suspension from the Eastern and Southern Districts of New York. (*See* Yagui's Mem. 14–15.) *See Mendez*, 2025 WL 3089308, at *2 (discussing Faillace's suspension and noting Faillace failed to notify the court of his

46

suspension in his request for attorneys' fees).  The Court recognizes that Faillace's work on this case was post-reinstatement by approximately two years.

Meanwhile, district courts in the Second Circuit have also found the attorneys' fees for associates of Michael Faillace & Associates too high and reduced their rates.  *See Vazquez Romero*, 2026 WL 687228, at *15 (reducing associates of Michael Faillace & Associates attorneys' fees rates from $400 and $350 to $350 and $295, respectively); *Gautier*, 2025 WL 2807124, at *10 (reducing associates of Michael Faillace & Associates attorneys' fees rates from $350 and $300 to $225); *Escobar*, 2025 WL 934906, at *17 (reducing associate's rate from $350 to $200); *Olivares*, 2022 WL 4534458, at *11–12 (reducing attorney's fee rate from $350 to $250 for an associate at Michael Faillace & Associates with five years of experience); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003, 2021 WL 2227977, at *12 (E.D.N.Y. May 11, 2021) (awarding $200 per hour for senior associate with Michael Faillace & Associates), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Specifically for Barton, some courts in this Circuit have awarded his requested rate, while others have slightly reduced his rate.  *See Mendez*, 2025 WL 3089308, at *2 (finding Barton's $400 hourly rate reasonable based on his experience); *Perez v. Mesa Azteca Corp.*, No. 23-CV-9374, 2024 WL 5274641, at *14 (E.D.N.Y. Dec. 5, 2024) (awarding Barton's requested rate of $375 per hour when he worked as of counsel at CSM Legal, formerly Michael Faillace & Associates, because his requested rate was "within the regularly approved hourly rates for partners on FLSA cases"), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Dec. 30, 2024); *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382, 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (awarding Barton's requested $375 hourly rate); *cf. Najera v. Kurtishi*, No. 21-CV-1309, 2024 WL 180867, at *2 (S.D.N.Y. Jan. 17, 2024) (reducing Barton's requested $400 hourly rate to $375 because it was too high); *Tarax*, 2022 WL 2132749, at *2

47

(reducing Barton's requested $375 hourly rate to $300 in a case that went to trial because it was "higher than the rate typically approved for senior associates in wage-and-hour cases" and finding the lower rate reflected "Barton's experience and the quality of his advocacy in the present case").

Importantly, similar to the errors that the court noted in *Tambriz v. Taste & Sabor LLC*, the work product produced in this case is sloppy and full of prejudicial errors. For example: the Complaint misstates the status of Yagui's employment, stating she was employed at the present date of filing (May 13, 2025) when, in fact, she concluded her work at Republic on March 21, 2025, (Yagui's Mem. 5 n.1; Yagui's Decl. ¶ 10); the memorandum supporting the motion for default judgment mistakenly includes duplicate paragraphs, (*id.* at 10); and the Damages Chart is designated as a privileged settlement communication and subject to revision/correction and omits six months of eligible unpaid wages, and as a result, Yagui's counsel requested a lower damages amount than Yagui was entitled to recover, (Damages Chart).

Accordingly the Court reduces Faillace's and Barton's attorneys' rates to $400 and $375 respectively. First for Faillace, in light of the most recent awards in the Second Circuit to Faillace, *see Gautier*, 2025 WL 2807124, at *10 (reducing Faillace's award from $450 to $400); *Escobar*, 2025 WL 934906, at *17 (reducing Faillace's award from $450 to $375), and the briefing errors, *see Tambriz*, 577 F. Supp. 3d at 333–34 (reducing Faillace's attorneys' fee from $450 to $300 due, in part, to drafting errors), the Court finds the rate requested for Faillace is unreasonable and reduces his rate for this case to $400 per hour. *See Mendez*, 2025 WL 3089308, at *2 (finding that while Faillace's "post-reinstatement good conduct and the passage of time" will allow for his rates to increase, "his reinstatement [is] so relatively recent, it still seems . . . that a paying client would be extremely hesitant to pay those top rates to an attorney who was found to have effectively stolen settlements from clients"). Second, while Barton has

provided some background of his experience and expertise in labor litigation, Barton does not

provide examples of previously awarded rates, and as noted, Yagui's briefing contains many

errors.  Therefore, the Court reduces Barton's attorneys' fees rate from $400 per hour to $375.

*See Perez*, 2024 WL 5274641, at *14 (awarding Barton a rate of $375 per hour); *see also*

*Howarth*, 2020 WL 3441030, at *5 ("Where a moving party 'fails to provide information on the

attorneys' and paralegals' backgrounds and experience, courts have used their discretion to

award fees at a rate lower than requested.'" (quoting *Malletier*, 687 F. Supp. 2d at 362)).

### B.    Hours reasonably expended

The Attorneys' Fees attachment shows Faillace and Barton spent a total of 12.3 hours

total litigating this default judgment action, with Faillace working 7.1 hours and Barton working

5.2 hours.  (Attorneys' Fees.)

In reviewing a fee application, courts may review the expenditure of hours submitted by

counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case.

*See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9,

2024) ("In determining whether the number of hours worked is reasonable, a district court should

examine[] the particular hours expended by counsel with a view to the value of the work product

of the specific expenditures to the client's case." (alteration in original) (internal quotation marks

omitted) (quoting *Chaparro*, 2021 WL 5121140, at *2)); *Agudath*, 2023 WL 2637344, at *2

("When reviewing a fee application, a district court should 'examine[ ] the particular hours

expended by counsel with a view to the value of the work product of the specific expenditures to

the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should

exclude these hours' from the fee calculation.'" (alteration in original) (quoting *Luciano v.

Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))).  To obtain an award of attorneys' fees, a

petitioner must provide contemporaneous time records that support the date work was

49

performed, the nature of the hours expended, and the work done.  *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (citation and internal quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024).  Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)); *see Abularach*, 2025 WL 405986, at *7–9 (recognizing that while block billing is permissible if the court can meaningfully review the hours, courts may reduce total time when billing includes excessive or administrative work). However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Raja*, 43 F.4th at 87 (quoting *Restivo*, 846 F.3d at 591).  "In determining

50

the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023). "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Raja*, 43 F.4th at 87).

Yagui has provided sufficiently detailed records to justify the number of hours billed in this case, documenting the work performed in this matter, including the dates that the services were performed, the amount of time during which services were provided, and a brief description of each task performed. The Court finds a total of 12.3 hours spent by Faillace and Barton in litigating this default judgment action to be reasonable in light of the circumstances of this case. *See e.g.*, *Lata v. Live Constr. Corp.*, No. 24-CV-5981, 2025 WL 2782336, at *19 (E.D.N.Y. Sep. 18, 2025) (finding 24.2 hours of attorney time and 12 hours of paralegal time to be reasonable in an FLSA and NYLL default judgment case), *report and recommendation adopted*, 2025 WL 2782495 (E.D.N.Y Sep. 30, 2025); *Garzon v. Bldg. Servs. Inc.*, No. 24-CV-5429, 2025 WL 1871171, at *20 (S.D.N.Y. July 2, 2025) (finding 18.5 hours of attorney work to be reasonable and "comparable to time approved as reasonable by courts in this Circuit for work on a default judgment"), *report and recommendation adopted*, 2025 WL 2062741 (S.D.N.Y. July 23, 2025); *Cazarez v. T&T 130 Pizza Corp.*, No. 20-CV-5545, 2025 WL 964551, at *11 (S.D.N.Y. Feb. 26, 2025) (finding 12.6 hours reasonable for an FLSA/NYLL case), *report and recommendation adopted*, No. 20-CV-5545, 2025 WL 964450 (S.D.N.Y. Mar. 31, 2025); *Melo*, 750 F. Supp. 3d at 62 (finding 27.48 hours of attorney work to be reasonable); *Sanchez Flores-v. El Bukanitas Inc.*, No. 22-CV-6751, 2024 WL 1051161, at *15 (E.D.N.Y. Feb. 14, 2024) (finding that 65.11 hours "far exceed[ed] the number of hours regularly approved in FLSA and NYLL cases that

51

proceed almost immediately to default judgment" but nevertheless recommending an award of attorneys' fees for 48.84 hours) (citation omitted), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 19, 2024); *Du v. CGS Metal Fabrication Inc.*, No. 19-CV-1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 27.6 hours of associate time and 3.5 hours of paralegal time reasonable), *report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Jan. 31, 2022); *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding 13.51 hours reasonable in an FLSA and NYLL default judgment action).

### C.    Lodestar calculation

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). Accordingly, the Court calculates the lodestar for Faillace by multiplying his total hours (7.1) by his hourly rate ($400), resulting in an award of $2,840.00 in fees. (*See* Attorneys' Fees.) Similarly, the Court calculates the lodestar for Barton by multiplying his total hours (5.2) by his hourly rate ($375), resulting in an award $1,950.00 in fees. (*See id.*) Defendants therefore owe Yagui a total of $4,790.00 in attorneys' fees.

### 5.    Costs

Yagui argues that she is entitled to $651.00 in costs, consisting of a single filing fee of $405.00 and three service of process fees, two at $80.00 and one at $86.00. (Yagui's Mem. 14; Attorneys' Fees.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818

F.2d 278, 283 (2d Cir. 1987)).  As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs."  *Id*. (citations omitted).

The Court finds that Yagui's requested costs are reasonable and supported by adequate documentation.  Because Yagui's request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," and because these costs are supported by adequate documentation, the Court grants Yagui's request for costs in the amount of $651.00.  *Id.* (quoting *Reichman*, 818 F.2d at 283).

## III. Conclusion

The Court grants in part and denies in part Yagui's motion for default judgment.  The Court grants Yagui's motion for (a) unpaid minimum wages for the two weeks she was paid under the New York statutory minimum wage, and (b) unpaid overtime wages.  The Court denies Yagui's motion for (a) unpaid minimum wages for the time periods when Defendants paid Yagui higher than the applicable New York statutory minimum wage and (b) damages for wage notice and settlement claims under the WTPA.  The Court dismisses Yagui's claims for spread of hours pay, reimbursement for equipment costs, and violations of the timely payment provision of the NYLL as abandoned.

The Court awards damages against Defendants in the amount of $71,211.26 to Yagui, consisting of: (1) $35,605.63 in unpaid wages for violations of the unpaid wage and overtime provisions of the NYLL; and (2) $35,605.63 in liquidated damages.  The Court also grants prejudgment interest, to be calculated at a rate of $8.78 per day from April 10, 2024, the midway point between the start and end dates of Yagui's employment, until the date judgment is entered.  If any amount of the judgment remains unpaid within ninety days after judgment or after the time to appeal has expired if no appeal is pending, Yagui's damages under the NYLL will be

53

increased by fifteen percent in accordance with NYLL § 198(4).[21]  In addition, the Court awards

Yagui $4,790.00 in attorneys' fees and $651.00 in costs.

Dated: May 12, 2026
      Brooklyn, New York

                                              SO ORDERED:


                                              _____s/ MKB_____
                                              MARGO K. BRODIE
                                              United States District Judge

---

[21]  NYLL § 198(4) states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418, 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024).  The increase applies only to Yagui's damages awarded under the NYLL.  *Lopez*, 2023 WL 9603828, at *16 n.13 ("The increase applies only to damages awarded under state law.").  The Court grants Yagui's request for such additional statutory damages.  (Compl. 28–29.)